**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 2 3 2025

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

TAMMY H. DOWNS, CLERK

By:_____ DEP CLERK

DERRANCE HARRIS, on behalf of himself
and others similarly situated,

      Plaintiff,

v.

GULFSTREAM RISK PARTNERS, LLC
d/b/a. SQUEEZE INSURANCE,

      Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION FILE NO.
**4:25-cv-397-JM**

**COMPLAINT – CLASS ACTION**

**JURY TRIAL DEMANDED**
This case assigned to District Judge **Moody**
and to Magistrate Judge **Moore**

Plaintiff Derrance Harris (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans "outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers" *id.* § 2(6), and sought to strike a balance between "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms" *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations

was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal

government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry

stands out as a model of clarity. It means what it says. If a person wishes to no longer receive

telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone

solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an

abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . .

initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is

on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either

monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision

designed to achieve a straightforward result. Congress enacted the law to protect against

invasions of privacy that were harming people. The law empowers each person to protect his

own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA

affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon

their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

   3.  This case involves a campaign by Gulfstream Risk Partners, LLC d/b/a Squeeze

Insurance ("Squeeze") to market its services through the use of telemarketing calls in violation of

the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (hereinafter referred to as the

"TCPA").

   4.  The recipients of Squeeze's illegal calls, which include Plaintiff and the proposed

Class, are entitled to damages under the TCPA, and because the technology used by Squeeze

makes calls *en masse*, the appropriate vehicle for their recovery is a class action lawsuit.

## PARTIES

5.      Plaintiff is an individual located in this District.

6.      Defendant Gulfstream Risk Partners, LLC d/b/a Squeeze Insurance is a limited liability company.

## JURISDICTION AND VENUE

7.      This Court has federal question jurisdiction over the TCPA claim pursuant to 28 U.S.C. § 1331.

8.      This Court has specific personal jurisdiction over Squeeze because it made telemarketing calls into this District.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial portion of the events giving rise to this claim occurred in this District because Squeeze directed the calls at issue to Plaintiff into this District.

## TCPA BACKGROUND

The National Do Not Call Registry

10.      § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

11.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

<u>The TCPA Requires Entities to Have Sufficient Policies in Place to Prevent Unwanted Calls Before Making Telemarketing Calls</u>

14.    The TCPA specifically required the Federal Communication Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

15.    The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." Id. at (c)(1)(A), (E).

16.    Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992).

17.    These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

18.    Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do not call list, train personnel engaged in

telemarketing on the existence and use of its internal do not call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

## FACTUAL ALLEGATIONS

19.     Defendant Squeeze is a "person" as the term is defined by 47 U.S.C. § 153(39).

20.     Squeeze offers insurance services and makes telemarketing calls to generate leads.

21.     Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

22.     Plaintiff's residential telephone number, (501) XXX-XXXX, has been registered with the National Do Not Call Registry since before 31 days prior to receiving the calls.

23.     This is Plaintiff's residential telephone number.

24.     Plaintiff uses this phone for personal use only. It is not used as a business number.

25.     Plaintiff's telephone number is assigned to a telephone exchange service for consumers, and not a telephone exchange service for businesses.

26.     Despite this, the Plaintiff received at least 5 telemarketing texts from the Defendant on multiple days, including in June, December 17, 18, 22 and January 16, 2025.

27.     The calls all promoted the Defendant's insurance services:

28.     Some of the text messages are below:

5

8:04                                    .ııll LTE ▢

< 67                    

+1 (855) 451-1464 >

Wed, Dec 18 at 11:05 AM

Remove

Please contact us at
support@squeeze.com or
(561) 303-0429 for further help.

Sun, Dec 22 at 12:53 PM

Hi Derrance, it's Squeeze – U.S. auto
insurance rates increased +24% last
year, so now is a great time to shop
to see how much we can save you,
AND it only takes 2 minutes! We
shop top insurers like Progressive,
Geico, Nationwide & more and can
switch policies for you in minutes
(our avg. auto customer SAVES
$871)! Just click or call us to check
your rate options & see how much
you can save – you can even buy
online! Click https://squeeze.cc/Vevo
or call or text us at 561-303-0429

Sun, Dec 22 at 7:17 PM

Remove

Please contact us at
support@squeeze.com or
(561) 303-0429 for further help.

Thu, Jan 16 at 12:57 PM

+    Text Message              🎤

6

8:04                    ·ıll LTE ▯

 67        

+1 (855) 451-1464 ›

Text Message
Fri, Jun 7 at 2:28 PM

Hi Derrance! It's Squeeze. Your Auto
Insurance policy from National
General is ready for you to view and
purchase.   Click here to see your
final purchase price, we are ready to
switch policies for you in a matter of
minutes! https://squeeze.cc/8XfXz
Or call or text now 561-303-0429

Hi, Derrance, This is Squeeze – We
are excited to help you finalize your
new auto insurance policy! Call us if
you have any questions:
561-303-0429

Tue, Dec 17 at 12:51 PM

Hi Derrance, it's Squeeze – your auto
insurance is renewing soon &
although U.S. rates increased +24%
last year, we're here to help! We can
instantly shop top insurers to help
find a better rate & switch policies
for you in a matter of minutes (our
avg. auto customer SAVES $871)!
Just click or call us to check your
rate options & see how much you
can save - it only takes 2 minutes!
Click https://squeeze.cc/LFR55dl or
call or text us at 561-303-0429

Wed, Dec 18 at 11:05 AM

＋        Text Message                

7

8:04      .ıll LTE 🔋

 67     

+1 (855) 451-1464

Hi Derrance, it's Squeeze – U.S. auto insurance rates increased +24% last year, so now is a great time to shop to see how much we can save you, AND it only takes 2 minutes! We shop top insurers like Progressive, Geico, Nationwide & more and can switch policies for you in minutes (our avg. auto customer SAVES $871)! Just click or call us to check your rate options & see how much you can save – you can even buy online! Click https://squeeze.cc/Vevo or call or text us at 561-303-0429

Sun, Dec 22 at 7:17 PM

Remove

Please contact us at support@squeeze.com or (561) 303-0429 for further help.

Thu, Jan 16 at 12:57 PM

Hi Derrance, it's Squeeze. It's time to have Squeeze reshop your auto insurance to make sure you still have the best rate available. We can help you find a better rate and switch carriers in a matter of minutes online! https://squeeze.cc/liw771Y Or call or text us now at 561-303-0429

+    Text Message      🎤 

8

29.    Multiple text messages were sent after the Plaintiff texted "Remove".

30.    This is a "reasonable means" to opt-out of receiving text messages. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order and Further Notice of Proposed Rulemaking (February 15, 2024).

31.    Despite Plaintiff's reasonable attempts to end the messages, Defendant continued to send them.

32.    The Plaintiff did not provide consent to the Defendant and the calls were unwanted.

33.    Because the text messages were sent to encourage the purchase of insurance services, the text messages were telemarketing and were placed to further Defendant's commercial purposes.

34.    A reasonable seller would ensure that it did not send messages to numbers on the National Do Not Call Registry.

35.    Plaintiff's privacy has been violated by the above-described telemarketing calls/text messages.

36.    Plaintiff never provided his consent or requested these messages.

37.    In fact, as illustrated above, the Plaintiff revoked any purported consent to receive the messages multiple times, but they continued despite this revocation. However, revocation was not necessary as no consent was given by Plaintiff.

38.    The aforementioned messages to the Plaintiff were unwanted, unwelcomed, unsolicited, and were sent without Plaintiff's consent- whether explicit or implicit.

39.    The messages were non-consensual encounters.

40.    Plaintiff and all members of the Classes, defined below, have been harmed by the

9

acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the messages occupied their telephone storage space, rendering them unavailable for legitimate communication and other legitimate uses, including while driving, working, and performing other critical household tasks for which storage is required.

## CLASS ACTION ALLEGATIONS

41.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

42.    Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23:

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant promoting Squeeze's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Internal Do Not Call Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) who had previously asked to no longer receive calls and (4) within the four years prior to the filing of the Complaint.

43.    Excluded from the classes are Defendant, Defendant's officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

44.    **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time for

10

each class, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of its agents.

45.    **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant's telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

46.    **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Class, and Defendant has no defenses unique to Plaintiff.

47.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

(A)    whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

(B)    whether Defendant systematically failed to honor opt-out requests;

(C)    whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls

(D)    whether Defendant made calls to Plaintiff and members of the early/late call class outside permitted hours, and;

(E)    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

48.    **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members, in each Class, such that joinder of all members is impracticable.

49.    In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a.    The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

b.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c.    Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

d.    Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

50.    Plaintiff realleges and incorporates by reference paragraphs 1-49.

51.    It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

52.    Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

53.    These violations were willful or knowing.

54.    As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

55.    Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d))
### (On Behalf of Plaintiff and the Internal DNC Class)

56.     Plaintiff realleges and incorporates by reference paragraphs 1-49.

57.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

58.     Defendant's violations were negligent, willful, or knowing.

59.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment against Defendant for:

A.     Certification of the Classes as alleged herein;

B.     Appointment of Plaintiff as representative of the Classes;

C.     Appointment of the undersigned as counsel for the Classes;

D.     Damages to Plaintiff and members of the Classes for each violation pursuant to 47 U.S.C. § 227(c)(5);

14

E.      Injunctive relief for the Classes, pursuant to 47 U.S.C. § 227(c)(5) preventing the Defendant from making calls to numbers listed on the National Do Not Call Registry, outside the permitted hours, or to numbers who had requested that they cease, in the future.

F.      Attorneys' fees and costs, as permitted by law; and

G.      Such other or further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Dated: April 22, 2025

Jason M. Ryburn
**Ryburn Law Firm, PLLC**
650 S. Shackleford Rd., Ste. 231
Little Rock, AR 72211
Tel: (501) 228-8100
Fax: (501) 330-8631
jason@ryburnlawfirm.com

Anthony I. Paronich,
*Subject to Pro Hac Vice*
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

*Attorneys for Plaintiff*