IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| DERRANCE HARRIS, on behalf of himself and others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>GULFSTREAM RISK PARTNERS, LLC d/b/a SQUEEZE INSURANCE,<br><br>*Defendant*. | Case No. 4:25-CV-00397-JM |

**DEFENDANT GULFSTREAM RISK PARTNERS, LLC d/b/a SQUEEZE INSURANCE'S BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY, TRANSFER VENUE OR DISMISS THE COMPLAINT**

Defendant Gulfstream Risk Partners, LLC d/b/a Squeeze Insurance ("Squeeze"), by and through its attorneys, Storrings Law and Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., for its Brief in Support of Motion to Compel Arbitration, or alternatively, Transfer Venue or Dismiss the Complaint (Doc. 1), submits the following:

### I.   INTRODUCTION

On April 22, 2025, Plaintiff Derrance Harris ("Plaintiff") filed this putative class action against Defendant Squeeze under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"). Coined "the poster child for lawsuit abuse"[1] by the Chairman of the Federal Communications Commission ("FCC"), the TCPA has spawned an unparalleled wave of litigation—including numerous manufactured and baseless actions—because of its statutory damages provision that permits recovery of $500 to $1,500 per call, text message, or fax, with no

---

[1] *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30 FCC Rcd. 7961, 8073 (2015) (Now-Chairman Pai, dissenting).

1

cap on aggregate damages. This is such a case. This proceeding is subject to a binding arbitration agreement, and the Court should compel arbitration. Alternatively, this Court should transfer the case to the Southern District of Florida. Further, this case should be dismissed outright for several reasons, including failure to state a claim and an impermissible fail-safe class. Lastly, if Plaintiff's claims do proceed, Defendant requests a more definitive statement.

## II.     THE COURT SHOULD COMPEL ARBITRATION.

### A.     Introduction to brief in support of motion to compel arbitration

Plaintiff Derrance Harris brings this suit against Squeeze for alleged violations of the do-not-call regulations of the TCPA, 47 U.S.C. § 227(c)(5). Plaintiff's claim should be compelled to arbitration pursuant to the Federal Arbitration Act ("FAA") because Plaintiff's claim is subject to a binding and enforceable arbitration agreement.

The Complaint identifies five text messages Plaintiff allegedly received between June 7, 2024 and January 16, 2025 (Doc. 1, ¶26). These texts were sent in response to Plaintiff's online submission of his contact information and consent to receive text messages when Plaintiff requesting free insurance information from Squeeze and became a Squeeze member on June 7, 2024.

As part of this submission, Plaintiff agreed, among other things, to arbitrate all claims against Squeeze arising out of his submission. Plaintiff violated this agreement by filing this lawsuit against Squeeze. Pursuant to well-established Eighth Circuit precedent and the FAA, 9 U.S.C. § 4, this Court should foreclose that violation, enforce the agreement, and compel Plaintiff's individual claim to arbitration. *See, e.g., Foster v. Walmart, Inc.*, 15 F.4th 860, 863 (8th Cir. 2021) (enforcing arbitration agreement that "required the user to explicitly assent by clicking 'I agree'

2

(or something similar)" and noting that "courts rarely find problems with" such agreements "because the user sees the list of the terms and conditions before accepting them").

**B.   Statement of law to compel arbitration**

There is a strong federal policy in favor of arbitration, and courts are required to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *see also Great Am. Ins. Co. v. Russell*, 914 F.3d 1147, 1150 (8th Cir. 2019) ("The Federal Arbitration Act is a congressional declaration of a liberal federal policy favoring arbitration agreements." (internal quotation omitted)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836 (8th Cir. 2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

In addressing motions to compel arbitration, courts generally ask: (1) whether there is a valid arbitration agreement, and (2) whether the particular dispute falls within the terms of that agreement. *Smelser v. Discover Bank*, No. 1:19-CV-1025, 2019 WL 5618083, at *1 (W.D. Ark. Oct. 31, 2019), quoting *E.E.O.C. v. Woodmen of the World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007).

**C.   Argument to compel arbitration**

On June 7, 2024, Plaintiff visited Squeeze.com and became a member to find savings and increased value on his insurance. To become a Squeeze member, Plaintiff entered his information, including his name, email address, and his telephone number. Before becoming a member, Plaintiff clicked a submission button confirming that he consented and agreed to Squeeze's Terms of Service. These Terms of Service are attached hereto as Exhibit 1. The front page of the Terms of Service, accepted by Plaintiff on June 7, 2024, note in capital letters, "ARBITRATION NOTICE

AND CLASS ACTION WAIVER: EXCEPT FOR CERTAIN TYPES OF DISPUTES DESCRIBED IN THE ARBITRATION SECTION BELOW, YOU AGREE THAT DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION AND YOU WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION."

At all relevant times, the Terms of Service further included (and still include) an arbitration clause and class action waiver, which is bolded in a larger text size than the rest of the document. This Clause is labeled "**IMPORTANT**," and "**PLEASE REVIEW AS THIS AFFECTS YOUR LEGAL RIGHTS**." The Arbitration and Class Action Waiver Clause Plaintiff agreed to states:

> YOU AGREE THAT ALL DISPUTES BETWEEN YOU AND US (WHETHER OR NOT SUCH DISPUTE INVOLVES A THIRD PARTY) WITH REGARD TO YOUR RELATIONSHIP WITH US, INCLUDING WITHOUT LIMITATION DISPUTES RELATED TO THESE TERMS OF SERVICE, YOUR USE OF THE SERVICES, AND/OR RIGHTS OF PRIVACY AND/OR PUBLICITY, WILL BE RESOLVED BY BINDING, INDIVIDUAL ARBITRATION UNDER THE AMERICAN ARBITRATION ASSOCIATION'S RULES FOR ARBITRATION OF CONSUMER-RELATED DISPUTES AND YOU AND WE HEREBY EXPRESSLY WAIVE TRIAL BY JURY; PROVIDED, HOWEVER, THAT TO THE EXTENT THAT YOU HAVE IN ANY MANNER VIOLATED OR THREATENED TO VIOLATE OUR INTELLECTUAL PROPERTY RIGHTS, WE MAY SEEK INJUNCTIVE OR OTHER APPROPRIATE RELIEF IN ANY STATE OR FEDERAL COURT IN THE STATE OF FLORIDA. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION. As an alternative, you may bring your claim in your local "small claims" court, if permitted by that small claims court's rules and if within such court's jurisdiction, unless such action is transferred, removed or appealed to a different court. You may bring claims only on your own behalf. Neither you nor we will participate in a class action or class-wide arbitration for any claims covered by this agreement to arbitrate. YOU ARE GIVING UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS. You also agree not to participate in claims brought in a private attorney general or representative capacity, or consolidated claims involving another person's account, if we are a party to the proceeding. This

> dispute resolution provision will be governed by the Federal Arbitration Act and not by any state law concerning arbitration. In the event the American Arbitration Association is unwilling or unable to set a hearing date within one hundred and sixty (160) days of filing the case, then either we or you can elect to have the arbitration administered instead by the Judicial Arbitration and Mediation Services. Judgment on the award rendered by the arbitrator may be entered in any court having competent jurisdiction. Any provision of applicable law notwithstanding, the arbitrator will not have authority to award damages, remedies or awards that conflict with these Terms of Service. You agree that regardless of any statute or law to the contrary, any claim or cause of action arising out of, related to or connected with the use of the Services or these Terms of Services must be filed within one (1) year after such claim of action arose or be forever banned.

Exhibit 1, p. 9. Such prominent displays are routinely held sufficient to bind individuals to arbitration clauses. *See, e.g., Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 301-02 (D. Mass. 2016), aff'd, 918 F.3d 181 (1st Cir. 2019) (compelling arbitration when "the arbitration provision is preceded by a clearly-worded, bolded, all-caps header in a font size that is larger than the text of the provision itself"); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (reversing denial of motion to compel on the basis of unconscionability when "[t]he arbitration provision was not hidden in unreadable fine print among these other terms").

Specifically in the TCPA context, Arkansas courts have compelled arbitration, "keeping in mind that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Smelser v. Discover Bank*, 2019 WL 5618083, at *4 (W.D. Ark. Oct. 31, 2019); *Smelser v. Discover Bank*, 2021 WL 6012280 (W.D. Ark. Jan. 11, 2021)

    **D.**    **Conclusion to compel arbitration and dismiss the Complaint**

Plaintiff entered into a valid and enforceable arbitration agreement with Squeeze when he voluntarily used Squeeze's services to request information about insurance quotes. As a result, this Court should dismiss the Complaint and compel Plaintiff to bring his claims in arbitration. *See JES Farms Partn. v. Indigo Ag Inc.*, 116 F.4th 733, 737 (8th Cir. 2024) (quoting *Smith v. Spizzirri*, 601 U.S. 472 (2024)).

### III.   THIS COURT SHOULD TRANSFER PROCEEDINGS TO THE SOUTHERN DISTRICT OF FLORIDA.

In the alternative to compelling arbitration, Defendant seeks transfer of this case to the District Court for the Southern District of Florida because the plain language of the Terms of Service requires it, stating: "any dispute arising from or relating to the subject matter of these Terms of Service shall be governed by the exclusive jurisdiction and venue of the state and Federal courts of Boca Raton, Florida." *See* Exhibit 1, p. 10. When Plaintiff became a Squeeze member, he agreed to the Terms and Service, which provide that the Terms of Service shall be governed in accordance with the laws of the State of Florida. *Id.*

Even if venue is proper in this district, pursuant to 28 U.S.C.A. §1404(a), the Court may transfer a case to any other district or division where it might have been brought or to any district or division to which all parties have consented, for the convenience of the parties and in the interest of justice. Courts routinely transfer venue to enforce forum selection clauses in contracts. *See e.g. Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171, 1180 (E.D. Ark. 2019), quoting *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999) ("Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching.") Accordingly, a "forum clause should control, absent a strong showing that it should be set aside by the party resisting enforcement." *Doshier*, 417 F. Supp. 3d at 1180 (cleaned up).

Plaintiff could have, and should have, originally filed this action in the Southern District of Florida because he agreed to litigate this dispute in the Southern District of Florida when he became a Squeeze member and agreed to Squeeze's Terms of Service. Therefore, as Plaintiff should have originally brought his claims in the District of Southern Florida, the Court should transfer venue to the Southern District of Florida pursuant to 28 U.S.C.A. §1404(a).

The Southern District of Florida is most convenient to the parties and the witnesses in this case, and a transfer to that district best serves the interests of justice. For these reasons, Defendant Squeeze respectfully requests the Court enter an order transferring this case to the Southern District of Florida; award its costs; and grant all other proper relief.

## IV. ALTERNATIVELY, THE COURT SHOULD DISMISS THE COMPLAINT OUTRIGHT.

### A. Introduction to brief in support of motion to dismiss the Complaint outright

Defendant respectfully submits that Plaintiff's claim is subject to a binding arbitration agreement or should be transferred to Southern District of Florida. Alternatively, to the extent that the Court reaches the merits of the Complaint, the Complaint should be dismissed for failure to state a claim. Plaintiff does not allege any facts concerning how Squeeze allegedly texted his cell phone using an automatic telephone dialing system ("ATDS"). This is a required element of the claim that is absent.

### B. Statement of law to dismiss the Complaint

In reviewing a motion to dismiss under Rule 12(b)(6), the factual allegations in a complaint must be taken as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678; and cannot simply leave open "the possibility that a plaintiff might later establish some 'set of

[undisclosed] facts' to support recovery." *Twombly*, 550 U.S. at 561 (alterations in original). Instead, the facts in the complaint must be sufficient "to nudge" the claims "across the line from conceivable to plausible." *Id.* at 570.

### C. Argument to dismiss the Complaint

Squeeze provides members with the lowest rates on recurring bills like home and automobile insurance. To receive messages from Squeeze, individuals must create a Squeeze account, voluntarily provide their contact information, and agree to Squeeze's Terms of Service. These Terms of Service state that, by providing a phone number, members authorize Squeeze and its associate insurance providers to text them about Squeeze's Services. The Terms of Service also provide that individuals may only bring legal claims on their own behalf.

"To state a plausible cause of action under the TCPA, [a plaintiff] must allege that: (1) a call was made; (2) the caller used an ATDS or artificial or prerecorded voice; (3) the telephone number called was assigned to a cellular telephone service; and (4) the caller did not have any prior express consent of the recipient." *Ueckert v. State Farm Bank, F.S.B.,* 2017 WL 3981136, at *1 (W.D. Ark. Sept. 11, 2017) (citations omitted). "A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), *as revised* (Feb. 9, 2016). Plaintiff's bare-bones allegations fail to state a plausible cause of action under the TCPA, and the Complaint should be dismissed as a result.

Specifically, Plaintiff's complaint should be dismissed because Plaintiff fails to sufficiently allege the use of an ATDS. Aimed at curtailing unsolicited telemarketing, *see* Tel. Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394–95, the TCPA prohibits non-emergency calls to cell phones *only* if made "using any [ATDS] or an artificial or prerecorded voice" without the called party's "prior express consent." 47 U.S.C. § 227(b)(1). Plaintiff does not

8

allege that Squeeze placed calls to his cell phone using a "prerecorded voice," so his claim here turns on whether he has alleged that Squeeze used an ATDS when texting him. The TCPA defines the term "ATDS" as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). Here, Plaintiff has failed to allege any facts that Squeeze texted him using equipment that would actually constitute an ATDS. Failure to plead that element results in dismissal.

Federal Courts in Arkansas have dismissed cases in similar circumstances. *Cross v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 193016, at *8 (W.D. Ark. Jan. 20, 2022) (dismissing TCPA claim based on text message because the complaint failed to "state a plausible claim that [plaintiff's] cell phone number was randomly stored or generated using an ATDS"); *see also Hyatt v. J.B. Hunt Transp. Servs.*, Inc., 2015 WL 13648356, at *1-2 (W.D. Ark. June 16, 2015) (dismissing TCPA claim where plaintiff merely alleged that he received multiple calls from defendant).

Courts nationwide also regularly dismiss TCPA claims where a plaintiff asserts nothing more than an unadorned receipt of an autodialed call. *Margulis v. Generation Life Ins. Co.*, 91 F. Supp. 3d 1165, 1168 (E.D. Mo. 2015) (granting defendant's motion to dismiss where plaintiff made threadbare legal conclusions about the defendant's use of an ATDS and failed to link the defendant to the alleged conduct); *Gelakoski v. Colltech, Inc.*, 2013 WL 136241, at *3 (D. Minn. Jan. 10, 2013) (dismissing TCPA claim on summary judgment where plaintiff had made only conclusory allegations that defendant had contacted him with an autodialer); *Hazan v. Wells Fargo & Co.*, 2019 WL 1923272, at *3 (D.N.J. Apr. 30, 2019); *Calhoun v. Invention Submission Corp.*, 2019 WL 1547372, at *5 (W.D. Pa. Apr. 9, 2019) (dismissing TCPA claim where "[t]here [were] no other facts alleged in the Complaint that would suggest the use of an ATDS").

Here, the Plaintiff's complaint suffers the same fate. Plaintiff's Complaint does not even plead Squeeze's use of an ATDS, let alone describe "the circumstances surrounding the calls [or texts] that led him to believe the defendant had used an ATDS." *Ueckert v. State Farm Bank, F.S.B.*, 2017 WL 3981136, at *2 (W.D. Ark. Sept. 11, 2017). Plaintiff's Complaint provides no information at all about the calls he received from Squeeze to support an inference that at ATDS was used. Therefore, Plaintiff does not satisfy the pleading standard for the ATDS elements of a TCPA claim, and the overwhelming case law supports dismissal on this basis. Accordingly, the Court should dismiss Plaintiff's TCPA claim outright.[2]

### V. PLAINTIFF'S CLASS ALLEGATIONS SHOULD BE STRICKEN AS THEY HAVE BEEN WAIVED, OR ALTERNATIVELY STRICKEN AS AN IMPERMISSIBLE "FAIL SAFE" CLASS.

To the extent that the Complaint is not dismissed outright, the class allegations in the Complaint cannot survive. When Plaintiff consented to Squeeze's Terms of Service, he contractually agreed to arbitrate claims and waive a trial by jury. Further, Plaintiff waived his right to participate in a class-action lawsuit. Exhibit 1, p. 9 ("You may bring claims only on your own behalf. Neither you nor we will participate in a class action or class-wide arbitration for any claims covered by this agreement to arbitrate."). For this reason alone, the class allegations should be stricken, so that to the extent that this case continues at all, it continues as a single plaintiff action.

Even if Plaintiff could state a cause of action, which he has not and cannot do, his class allegations should be stricken because he proposes an improper "fail safe" class. Plaintiff's class allegations within the Complaint are so facially improper and inadequate that the proposed classes

---

[2] Because plaintiff has not pleaded any facts that could sustain any TCPA claim, he is not entitled to maintain a claim for a "knowing or willful" violation of the TCPA. S*ee Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001) (plaintiff bears burden of establishing knowing or willful violation of TCPA).

are uncertifiable as pled. Federal courts routinely grant motions to strike such facially uncertifiable class allegations at the pleadings stage, and the Eighth Circuit recently reaffirmed that doing so is entirely proper in appropriate cases.

Accordingly, should the Court not dismiss the Complaint for any reason, it should nevertheless strike Plaintiff's deficient class and other allegations under Fed. R. Civ. P. 12(f) and/or 23 before the Court and the parties waste needless time on discovery relating to them.

### A. "Fail Safe" classes should be stricken on rule 12(f) motions.

"Sometimes the issues are plain enough from the pleadings" to determine a case should not proceed as a class action and, thus, that a court may properly resolve class certification at the pleadings stage on a defendant's motion to strike before a motion to certify is filed. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1091–92 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 2675 (2022). In fact, the Eighth Circuit recently reaffirmed that district courts may strike faulty class allegations at the pleadings stage under Rule 12(f) where, as here, it is apparent from the face of the complaint that the proposed classes are not certifiable under Rule 23 as pleaded. *Donelson*, 999 F.3d at 1092 (citing, inter alia, 5C Wright & Miller, FEDERAL PRAC. & PROC. § 1383 (3d ed.)). In fact, the Federal Rules mandate that the Court determine whether or not to certify a class action "[a]t an early practicable time," Fed. R. Civ. P. 23(c)(1)(A), and further authorize the Court to "issue orders that require that the pleadings be amended to eliminate allegations about representation of absent persons," *id*. 23(d)(1)(D).

Courts in the Eighth Circuit and elsewhere routinely find proposed classes to be uncertifiable and strike them at the pleadings stage, particularly in TCPA cases like this one, where inter alia: (i) the proposed class definitions are impermissibly "fail-safe" or overbroad; and/or (ii)

11

common questions of law or fact do not predominate and thus individualized determinations would be required. *See, e.g., Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013) (striking proposed TCPA class as "fail-safe" at the pleadings stage); *Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at *2-9 (S.D. Ohio May 7, 2014) (same); *Dixon v. Monterey Fin. Servs., Inc.*, 2016 WL 4426908, at *2-3 (N.D. Cal. Aug. 22, 2016) (same); *Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *1-5 (C.D. Cal. Dec. 21, 2016) (striking TCPA class allegations which "necessarily involve[d] individualized inquiries" and for being "impermissibl[y] fail-safe"); *Eldridge v. Cabela's Inc.*, 2017 WL 4364205, at *7-11 (W.D. Ky. Sept. 29, 2017) (striking proposed TCPA "revocation" class in part because individualized consent determinations would be needed and as being redundant); *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018) (striking proposed TCPA class as overbroad where it included members who had no viable claim).

Here, Plaintiff's class allegations are on their face an impermissible fail-safe class and should be stricken.

**B.     Plaintiff's proposed class is the definition of liability and, as such, is a fail-safe class.**

For starters, it is readily apparent that Plaintiff's proposed classes are all impermissibly "fail-safe." A proposed class definition is impermissibly fail-safe in violation of Rule 23 where, as here, the Court must make a determination on the merits of the class members' individual claims to determine membership. *E.g., Sauter*, 2014 WL 1814076, at *4; *Lindsay*, 2013 WL 275568, at *4.

Plaintiff's proposed class is the very definition of Squeeze's liability under the TCPA. If a person is a member of the class, then liability exists; if a person is not a member of the class, then liability does not. Such a proposed class definition constitutes an "independent ground for denying

12

class certification" because it "shields the putative class members from receiving an adverse judgment" and "[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). *Accord Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 624 (8th Cir. 2021) (ruling similarly).

Thus, federal courts routinely strike improper proposed class definitions at the pleadings stage in TCPA cases on this basis. *See, e.g., Sauter*, 2014 WL 1814076, at *8-9 (striking proposed class "defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS"); *Pepka*, 2016 WL 8919460, at *4 (granting motion to strike Section 227(b) class allegations case on fail-safe grounds); *Dixon*, 2016 WL 4426908, at *2-3 (same); *Lindsay Transmission, LLC*, 2013 WL 275568, at *4 (same); *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 (E.D. Mich. 2015) (holding that TCPA class composed of people who did not provide "prior express consent" to be contacted was an improper fail-safe class); *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 623-26 (E.D. Pa. 2015) (striking proposed TCPA class definition with "consent" in the definition); *Martinez v. TD Bank USA*, 2017 WL 2829601, at *12 (D.N.J. June 30, 2017) (same); *Bryant v. King's Creek Plantation, L.L.C.*, 2020 WL 6876292, at *3–4 (E.D. Va. June 22, 2020) (striking proposed Do Not Call class on fail-safe grounds, noting "[w]hen plaintiffs define a class that explicitly includes the lack of members' consent to receive the calls, a court is unable to establish member-ship of the class until the merits of each member's TCPA claim (i.e., that each member did not give consent) are determined; such a class must be deemed a fail-safe class."). This Court should rule similarly.

As applied here, all of Plaintiff's proposed classes are impermissibly fail-safe because membership in each depends on the merits of the putative class members' underlying claims (Doc. 1, ¶¶ 41-48). For example, each proposed class is defined to include all persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant promoting Squeeze's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial. (Doc. 1, ¶ 42). Further, in setting the parameters of the alleged class, Plaintiff claims that also relevant are whether Squeeze systematically failed to honor opt-out requests and whether Squeeze "made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls." (Doc. 1, ¶ 47).

In all, each of these issues is undoubtedly a merits-based inquiry going directly to the heart of the underlying TCPA claims in this case, as demonstrated above; and there is no objective way for the Court to determine who is a class member given Plaintiff's proposed definitions as pleaded. Therefore, all of Plaintiff's proposed classes are impermissibly "fail-safe" and, as such, they should be stricken on this basis alone.

    **C.**    **Common questions of law and fact do not predominate Plaintiff's proposed classes, and individualized determinations would be needed.**

Plaintiff's proposed classes would require the Court to make individualized determinations on the issue of consent, among others, which makes them impermissibly fail-safe as discussed above. However, this also shows that common questions of law and fact would not predominate, as required by Rule 23(b)(3). Under that rule, "common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 470 (N.D. Cal. 2014) (cleaned up). *See also Wal-Mart Stores, Inc. v.*

*Dukes*, 564 U.S. 338, 350 (2011) (a common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").

Predominance is lacking where the issues raised are "unique to each class member" and not subject to generalized proof. *In re Teflon Prod. Liab. Litig.*, 254 F.R.D. 354, 369 (S.D. Iowa 2008) (*citing Johnson v. GMAC Mortg. Group, Inc.*, 2006 WL 2433474, at *2 (N.D. Iowa Aug. 21, 2006)). Along those lines, courts often deny class certification in TCPA cases on predominance grounds where (as here) individualized determinations of "consent" or "revocation" of consent (among other issues) would be needed. *E.g., Ung v. Universal Accept. Corp.*, 319 F.R.D. 537, 540–41 (D. Minn. 2017); *Sandusky Wellness Ctr., LLC v. ASD Spec. Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017); *Visser v. Caribbean Cruise Line, Inc.*, 2020 WL 415845, at *5 (W.D. Mich. Jan. 27, 2020); *Saulsberry v. Meridian Fin. Servs., Inc.*, 2016 WL 3456939, at *11 (C.D. Cal. Apr. 14, 2016); *Revitch v. Citibank,* 2019 WL 1903247, at *4 (N.D. Cal. Apr. 28, 2019); *see also Trenz v. On-Line Admins., Inc.*, 2020 WL 5823565, at *8 (C.D. Cal. Aug. 10, 2020) (decertifying, noting "[t]he necessity of individual inquiries is a clear bar to class certification in TCPA matters") (collecting cases, emphasis added).

Courts also often strike class allegations or grant deny certification at the pleadings stage, in TCPA cases and others, where individualized determinations of "consent" are needed. *E.g., Eldridge*, 2017 WL 4364205, at *7–11; *Cholly v. Uptain Grp., Inc.*, 2017 WL 449176, at *4 (N.D. Ill. Feb. 1, 2017); *Pepka*, 2016 WL 8919460, at *4; *Lindsay*, 2013 WL 275568, at *5; *Dorfman v. Albertson's LLC*, 2020 WL 86192, at *5 (D. Idaho Jan. 7, 2020). Indeed, "the predominant issue of fact [in TCPA class actions] is undoubtedly one of individual consent." *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) (emphasis in original).

15

Here, it is apparent from the face of the Complaint that common questions of law and fact do not predominate and that individualized inquiries would be required. In this regard, as noted above, Plaintiff's proposed classes (i.e., "National DNC Class" and "Internal Do Not Call Class") would include only persons who did not provide their "consent" under the TCPA. Similarly, to qualify as a "telephone solicitation" as required for a DNC violation, and thus be a member of either of Plaintiff's two proposed classes, the recipient must not have provided their "prior express invitation or permission" (i.e., their consent) to the caller, among other things. See 47 U.S.C. §227(c)(5), 47 C.F.R. §§ 64.1200(c)(2)(ii) & (f)(15). The context and circumstances under which consumers might revoke "consent" to the same entity or different entities, or whether their revocation was "clear" and "unambiguous" enough to be legally effective as a matter of law, can naturally vary by individual and entity, too.

In short, whether any texts in this case were initiated without the consent of the Plaintiff and the putative class members, or whether they were made using an ATDS, are not common questions of law or fact that can be resolved by generalized proof across the entire class in a single adjudication. Rather, they would necessitate countless individualized factual and legal inquiries on those undoubtedly critical case-dispositive issues at the minimum, among many other key issues.

Therefore, all of Plaintiff's proposed classes should be stricken on this additional basis, as it is readily apparent from the face of the Complaint that he cannot meet Rule 23(b)(3). And because individualized determinations will undoubtedly be required on some or all of these critical issues no matter what amendments Plaintiff could conceivably make, leave to amend should not be granted. *See, e.g., Barrett v. ADT Corp.*, 2016 WL 865672, at *5 (S.D. Ohio Mar. 7, 2016).

## VI. PLAINTIFF SHOULD BE ORDERED TO PROVIDE A MORE DEFINITE STATEMENT.

Pursuant to Rule Fed. R. Civ. P. 12(e), and if the Court moves past arbitration, transfer, and dismissal, Defendant alternately moves the Court to require the Plaintiff to file an amended complaint setting forth in more definite terms his claim or cause of action before Defendant is required to respond herein because the Complaint is too vague or ambiguous for Defendant reasonably to be required to frame a responsive pleading.

Specifically, the issue concerns whether Plaintiff consented to receive text messages from Squeeze. In the Complaint, Plaintiff alleges he "did not provide consent to the Defendant and the calls were unwanted," and he "never provided his consent or requested these messages." (Doc. 1, ¶ 32, 36). Yet, he alleges in the very next paragraph that "the Plaintiff revoked **any purported consent** to receive the messages multiple times, but they continued despite this revocation. However, revocation was not necessary as no consent was given by Plaintiff." (Doc. 1, ¶ 37) (emphasis added). Plaintiff lastly alleges that "The aforementioned messages to the Plaintiff were unwanted, unwelcomed, unsolicited, and were sent without Plaintiffs consent- whether explicit or implicit." (Doc. 1, ¶ 38).

However, Plaintiff received texts from Squeeze only by providing his information to Squeeze, becoming a Squeeze member, and agreeing to Squeeze's Terms of Service. To date, Plaintiff is still a Squeeze member. From Plaintiff's initial pleading, it is unclear whether Plaintiff is claiming that he never consented to receive text messages from Squeeze at any time, or alternatively, whether he admits that he originally consented to receive text messages from Squeeze and subsequently revoked his consent. As such, Defendant requests that the Court order Plaintiff to remedy the defects in his Complaint supply the necessary details specified herein concerning Plaintiff's consent.

## VII.   CONCLUSION

For all the reasons set forth above, Plaintiff's claims are subject to a binding and enforceable arbitration agreement, and the Court should compel arbitration. In the alternative to compelling arbitration, this Court should transfer the case to the Southern District of Florida pursuant to the Terms of Service Plaintiff consented to. Alternatively, this case should be dismissed in its entirety with prejudice because Plaintiff's Complaint completely fails to state a claim under Fed. R. Civ. P. 12(b)(6). If this case does survive, which it should not, the class allegations should be stricken under Fed. R. Civ. P. 12(f) because Plaintiff proposes an improper "fail safe" class. Lastly, Defendant respectfully moves for a more definite statement because the Complaint is too ambiguous for Defendant to be required to frame a responsive pleading.

Respectfully submitted,

Dated: May 29, 2025

Devin R. Bates (Ark. Bar No. 2016184)
Abigail Grimes (Ark. Bar No. 2024215)
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, PLLC
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Telephone: (501) 688-8800
Fax: (501) 688-8807
*dbates@mwlaw.com*
*agrimes@mwlaw.com*

and

Harley Storrings (*Pro Hac Vice*)
STORRINGS LAW
3200 N University Dr Ste 203
Coral Springs, FL  33065
Phone: (954) 302-7148
Email: *harley@storringslaw.com*

*Attorneys for Gulfstream Risk Partners, LLC*
*d/b/a Squeeze Insurance*