**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

| | |
|---|---|
| DERRANCE HARRIS on behalf of himself and others similarly situated, | |
| Plaintiff, | Case No. 4:25-CV-00397-JM |
| vs. | |
| GULFSTREAM RISK PARTNERS, LLC d/b/a SQUEEZE INSURANCE | |
| Defendant. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION,
OR ALTERNATIVELY, TRANSFER VENUE OR DISMISS THE COMPLAINT**

**INTRODUCTION**

This case arises from a straightforward violation of the Telephone Consumer Protection Act ("TCPA"): Gulfstream Risk Partners, LLC ("Squeeze") sent repeated marketing text messages to Plaintiff Derrance Harris despite his number being listed on the National Do-Not-Call Registry and despite his explicit instruction to stop. Plaintiff never consented to these solicitations, never visited Squeeze's website, and never agreed to arbitrate any disputes. Yet Squeeze now asks this Court to compel arbitration based on a supposed website submission it cannot trace to Plaintiff, or to strike class allegations before discovery even begins.

These requests fail at every turn. Whether Plaintiff agreed to arbitrate is a threshold factual and legal issue for the Court—not an arbitrator—and that question is in sharp dispute. Indeed, Plaintiff categorically denies ever visiting Squeeze's website or consenting to any terms. The Federal Arbitration Act, Supreme Court precedent, and Eighth Circuit law all require that this

threshold be decided by the Court—and, where facts are disputed, by a jury. The motion to compel must therefore be denied.

Nor can Defendant shortcut the class certification process. Courts in this Circuit disfavor motions to strike class allegations at the pleading stage and rarely grant them, especially when, as here, discovery has not yet begun. Plaintiff has pleaded viable class definitions based on objective criteria, and any concerns about predominance or class manageability must await the Rule 23 stage.

Finally, Defendant's request for a more definite statement ignores the clarity of the Complaint and misuses Rule 12(e) as a tool to preview discovery, not clarify ambiguity. The Complaint provides ample notice of the claims at issue and satisfies the liberal federal pleading standard.

The motion should be denied in full.

## I.   BACKGROUND

Plaintiff Derrance Harris is an Arkansas resident who has listed his mobile number on the National Do-Not-Call Registry for years and uses that number solely for personal, residential purposes. Compl. ¶¶ 22-25. Gulfstream Risk Partners, LLC, doing business as Squeeze Insurance, markets insurance products by sending large volumes of promotional text messages. Id. ¶¶ 19-21. Between June 7 - 2024 and January 16 - 2025, Squeeze sent Harris at least five such messages, each advertising the company's rate-shopping service and urging him to purchase or switch insurance coverage. Id. ¶¶ 26-28. Harris never provided Squeeze with "prior express invitation or permission" to send these solicitations. Id. ¶ 32. After receiving the first messages, he replied "Remove"—a method the FCC recognizes as a reasonable opt-out request—yet Squeeze continued texting, disregarding both the National Registry and Harris's personal demand to stop. Id. ¶¶ 29-31, 37-38. These unwanted messages intruded on his privacy, occupied storage on his device, and caused annoyance and distraction in his daily activities. Id. ¶¶ 35, 40.

## II.    LEGAL STANDARD

In evaluating a motion to compel arbitration in a TCPA case, the Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 *et seq*., governs the enforceability of an arbitration agreement. That statute commands that before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. 9 U.S.C. § 4 (directing that courts must direct the parties to arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue"). That issue is for the court, not the arbitrator, to decide, even when there is a valid delegation provision. *Int'l Ass'n of Bridge, Struct., Ornamental, & Reinforcing Ironworkers, Shopman's Loc. 493 v. EFCO Corp. & Constr. Prods., Inc.*, 359 F.3d 954, 956 (8th Cir. 2004). When a motion to compel arbitration is brought by a party, courts must first determine whether the parties agreed to arbitrate. *Id.*. If the record shows a material issue of fact on whether the parties had an agreement to arbitrate the issue must be remanded for jury trial. *Daniel v. ABM Indus.*, No. 4:21-cv-00269-KGB, 2022 U.S. Dist. LEXIS 61189, at *11 (E.D. Ark. Mar. 31, 2022).

The party seeking to compel arbitration bears the burden of proving a valid agreement to arbitrate. The party seeking to compel arbitration bears the burden of proving a valid agreement to arbitrate. *Bsi Grp. LLC v. Ezbanc Corp*., 122 F.4th 712, 715 (8th Cir. 2024). In the Eighth Circuit the Court must decide 1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement applies to the dispute at hand. *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015)

## III.    ARGUMENT

A.    *There is no agreement parties and thus Defendant's motions to compel arbitration and transfer venue must be denied.*

"Arbitration is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010). The Supreme Court has held time and time again that, despite

the liberal policy favoring arbitration, "consent" remains a "first principle that underscores" all arbitration decisions. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019) Consent is essential under the FAA because arbitrators wield only the authority they are given. *Id.* The Supreme Court has held time and time again that, despite the liberal policy favoring arbitration, "consent" remains a "first principle that underscores" all arbitration decisions. *Id.* Consent is essential under the FAA because arbitrators wield only the authority they are given. *Id.* Defendant cannot invoke any arbitration clause against Mr. Harris because the factual question of whether the Plaintiff even agreed as a matter of contract is called into issue, as Mr. Harris's declaration points out that he never visited Squeeze's website and the information Squeeze contends was submitted was not submitted by him. Under Section 4 of the Federal Arbitration Act, a jury *must* decide this as a threshold to the threshold arbitrability matter, and jurisdiction lies with the Court on this issue, as confirmed by the Supreme Court in *Coinbase*, *infra*.

As the party seeking to arbitrate, Defendant bears the burden of demonstrating, at the same level as at summary judgment, *both* that legally valid arbitration agreement exists and that the *Plaintiff himself* agreed to be bound by the clause of which he had adequate legal notice, both points which will be addressed below. *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 329 (3d Cir. 2022) ("Because it is plausible that a number of the pharmacies were never given the terms of their Provider Agreements, it is likewise plausible that holding the pharmacies to the arbitration agreements contained therein would be procedurally unconscionable.").

The Supreme Court recently addressed the proper procedure to follow when conflicts arise as to the existence of arbitration contracts. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 143 (2024). The Supreme Court held that the first question in any arbitration dispute must be what the parties agreed to. *Id.* at 145. The Supreme Court clarified that *this* "fundamental" question is one for the *court*,

not the arbitrator, to decide, and is driven by contractual interpretation principles under state contract law. *Id.* In *Coinbase*, the Supreme Court reaffirmed that "where, as here, a challenge applies "equally" to the whole contract and to an arbitration or delegation provision, a *court* must address that challenge." *Id.* at 151 (*quoting Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 71 (2010). The Court went on to explain that in such cases, just like here, "basic principles of contract and consent require that result. Arbitration and delegation agreements are simply contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute." *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 71 for the proposition that "If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that [arbitration] agreement."). And the explicit text of Section 4 makes it clear that formation is a *jury* issue, "upon such demand the court shall . . . specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed." 9 U.S.C. § 4. As such, a jury trial is necessary to ascertain if the Plaintiff himself submitted his information to Squeeze's website and thus agreed to arbitrate, as the evidence in support of this is disputed.

Consistent with the "general proposition" that "a contract cannot bind a non-party," *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 9 (1st Cir. 2014), "the FAA does not require parties to arbitrate when they have not agreed to do so," *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). The FAA commands that, before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. 9 U.S.C. § 4; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration

of a dispute is to determine whether the parties agreed to arbitrate that dispute."). And, "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

In Arkansas and Florida[1], the party arguing the existence of a valid contract to arbitrate bears the burden of proving the contract existed and was formed, and that the Plaintiff himself agreed to be bound by the clause. *Erwin-Keith, Inc. v. Stewart*, 546 S.W.3d 508, 513 (Ark. App. 2018); "Appellants, as the proponents of arbitration, have the burden of establishing an enforceable written agreement to  arbitrate." *Palm Garden of Healthcare Holdings, LLC v. Haydu*, 209 So. 3d 636, 638 (Fla. 5th DCA 2017); *Eglin Fed. Credit Union v. Baird*, 400 So. 3d 643, 646 (Fla. Dist. Ct. App. 2024). As the party seeking to arbitrate, the Defendant bears the burden of demonstrating, at the same level as at summary judgment, not only that a valid arbitration agreement exists but also that the Plaintiff himself agreed to be bound by the clause. See *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005). Defendant will be unable to do so because the Plaintiff unequivocally denies ever having submitted his information to Defendant's website. *GP3 II, LLC v. Litong Cap., LLC*, 35 F.4th 1124, 1126 (8th Cir. 2022). And Defendant has presented no additional information or evidence to show that Mr. Harris himself visited Defendant's website or submitted any information at all. All the information the Defendant has is outlined below:

| Allegation | Truth |
|---|---|
| On June 7, 2024, Plaintiff visited Squeeze.com and became a member to find savings and increased value on his insurance | Plaintiff never visited Squeez.com |
| To become a Squeeze member, Plaintiff entered his information, including his name, email address, and his telephone number | Plaintiff never became a Squeeze member. |

---

[1] Defendant insists that the parties formed a contract with a Florida forum selection and choice-of-law clause. They did not. Nonetheless, this opposition addresses both Arkansas and Florida law—under either states law, no valid contract was formed.

| | |
|---|---|
| Before becoming a member, Plaintiff clicked a submission button confirming that he consented and agreed to Squeeze's Terms of Service. | Plaintiff never clicked any buttons on Squeeze.com and never consented to any terms of service. |

*See* Harris Declaration ¶¶2-6. Moreover, Squeeze's own production identifies an IP address that does not match any address associated with Mr. Harris's home or mobile devices, and Defendant has supplied no evidence linking Mr. Harris to the alleged web-submission. Mr. Harris's auto-insurance policy was mid-term and not up for renewal in June 2024, so he had no reason to search for new coverage and, in fact, never did. *Id.* ¶¶2, 10. Taken together, these facts confirm that he never interacted with Squeeze's website, never became a "member," and never assented—expressly or impliedly—to the Terms of Service or any arbitration or forum-selection clause contained therein. Finally, where no contract is formed, there can also be no enforceable forum selection clause. *See Minnesota Forest Products, Inc. v. Ligna Machinery, Inc.*, 1997 U.S. Dist. LEXIS 22839, at *16 (D. Minn. Feb. 24, 1997) (because there is no "no contract was formed" forum selection clause is unenforceable).

Under Arkansas law, "[a]rbitration is a matter of contract," and the party seeking to compel arbitration bears the burden of proving the existence of a valid agreement, including mutual assent. *Foster v. Walmart, Inc.*, 15 F.4th 860, 863 (8th Cir. 2021) (applying Arkansas law and remanding where the record failed to establish assent to browsewrap arbitration terms). Moreover, Defendant has not provided sufficient evidence to show that Plaintiff was on inquiry notice of the alleged terms. As the Eighth Circuit emphasized in *Foster v. Walmart*, "[i]nternet contracts, just like other agreements, require mutual assent between the parties—a so-called meeting of the minds." 15 F.4th 860, 863 (8th Cir. 2021) (cleaned up). Where the proponent relies on a website's design to establish inquiry notice, the court must examine "whether the website puts a reasonably

prudent user on inquiry notice of the terms." *Id.* at 864–65 (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)).

Here, Squeeze has produced no competent evidence of the landing page Mr. Harris supposedly viewed. The record contains no screenshots, no description of hyperlink prominence, no declaration explaining the location or formatting of the Terms of Service, and no reliable data indicating that Mr. Harris ever visited the site. This falls well short of what *Foster* required. There, the Eighth Circuit ordered a trial on the question of whether a contract existed because there was insufficient evidence that an agreement to arbitrate existed or that the consumer was on inquiry notice. *Foster*, 15 F.4th at 865.

Because Plaintiff never signed up for Defendant's website, he never consented to arbitrate his claims or to a particular forum or choice of law. At this stage, particularly as this case raises a factual challenge surrounding arbitrability, the Plaintiff is entitled to submit a declaration of his own in support of his position that he did not agree to arbitrate the dispute as an initial matter. *Gerrish v. Coast Pump & Supply Co.*, No. 8:21-cv-365-JSS, 2021 U.S. Dist. LEXIS 202979, at *2-4 (M.D. Fla. Oct. 21, 2021) To be clear, the Plaintiff denies ever having agreed to arbitrate. Plaintiff confirms that he did not visit the website, had nothing to do with the visit, and thus did not agree to arbitrate anything. (Harris Dec. ¶¶2-6). These factual disputes create issues of material fact and entitle Plaintiff to a summary arbitrational jury trial.

Several decisions dictate that the Defendant's motion ought to be denied on the basis of the Plaintiff's declaration *alone*. The Middle District of Georgia's decision in *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019), is particularly instructive. There, a TCPA defendant sought to compel arbitration by contending, as

here, that the plaintiff agreed to an arbitration provision as a result of his visits to the defendant's website. In finding no agreement to arbitrate existed, the court explained:

> Plaintiff presented evidence that he "did not visit www.bestautoinsurance.com" and that it would have been impossible for him to access the website in the manner Defendant says he did. . . . Plaintiff stated that he "cannot know for certain who accessed" Defendant's website and input his information, but "[w]hat [he] do[es] know for certain is that [he] did not visit www.bestautoinsurance.com." From this, a reasonable factfinder could determine that Plaintiff did not enter his personal information on Defendant's website or click "submit." So, a reasonable factfinder could conclude that Plaintiff did not assent to the website's terms, including the arbitration provision. Accordingly, there is a genuine fact dispute as to whether Plaintiff entered an arbitration agreement with Defendant, and the Court thus cannot conclude as a matter of law at this stage in the proceedings that the parties had a valid agreement to arbitrate. For this reason, Defendant's motion to dismiss in favor of arbitration is denied.

Id. at *1–*2 (cleaned up). Hobbs is one of several in a long line of cases either denying such motions outright or ultimately concluding that a summary arbitration trial was necessary in the TCPA context. *E.g., Gilliam v. Prince Health Grp. LLC*, No. 1:24-CV-00033, 2025 WL 1126545, at *4 (M.D. Tenn. Apr. 16, 2025 ("[O]ther than the fact that Plaintiff's name and phone number were used, Prince Health offers no evidence that Plaintiff was the person who entered the information."); *Woodard v. SmartMatch Ins. Agency, LLC*, No. 23 CV 5246, 2024 WL 4252803, at *3 (N.D. Ill. Sept. 20, 2024) (denying defendant's motion to compel arbitration where "plaintiff has identified facts showing a genuine dispute as to her acceptance of defendant's arbitration agreement").

The Court in *Conrad v. Camping World Holdings Inc.* reached a similar conclusion, reasoning that the factual question of whether the plaintiff opted in to receive text messages from the defendant on a website containing an arbitration provision was put at issue and denied a similar motion to compel arbitration. No. 4:24-CV-171-CLM, 2025 WL 66689, at *2 (N.D. Ala. Jan. 9, 2025). There, the court first agreed that its decision "as to whether an arbitration agreement exists

is simply a matter of contract," and that when a party does not "sign or otherwise enter the contract, he cannot be bound by its terms." *Id.* The court noted that the defendant provided no evidence to controvert the plaintiff's declaration, as here, that he did not agree to arbitrate any claims because he did not own the telephone number at issue at the time of the alleged opt-in, and thus that the defendant could not "show the parties had a meeting of the minds about arbitrating claims related to the CWH text message service." *Id.* As a result, Defendant has been and will be unable to meet its burden entitling Plaintiff to wholesale denial of the motion. The court in *Conrad* did the same, holding as a matter of law that the defendant did not meet its burden of demonstrating a disputed factual issue with respect to the claimed provision to justify an arbitration trial. *Id.* And, like in *Hobbs*, the Plaintiff has made similar allegations of faulty arbitrational facts, including his physical location and other mismatched information. 2019 WL 6878863, at *1–*2. And because Plaintiff never visited squeeze.com, Plaintiff agreed to nothing.

B.    *Defendant's ATDS arguments miss the mark—Plaintiff's claims do not require ATDS allegations.*

Defendant devotes pages to insisting that the Complaint must plead the use of an "automatic telephone-dialing system" ("ATDS"). That argument misunderstands the statute and the pleadings. This action is brought exclusively under 47 U.S.C. § 227(c) and the corresponding do-not-call regulations, which prohibit placing two or more telemarketing calls to a residential number on the National Do-Not-Call Registry—or to a consumer who has asked that the calls stop—without regard to the dialing technology employed. In other words, the TCPA's DNC provisions turn on *consent* and *frequency*, not on whether the marketer used a particular technology. This distinction is so basic that few courts make it explicit, yet the caselaw shows that § 227's do-not-call claims do not require an ATDS: courts dismiss ATDS counts while allowing DNC counts to proceed. See *Watson v. Manhattan Luxury Autos., Inc.*, 2024 U.S. Dist. LEXIS

170155, at *4 (S.D.N.Y. Sept. 19, 2024) (granting summary judgment on the ATDS claim because the defendant "did not use an automatic telephone dialer system as defined by the TCPA," but letting the DNC claims move forward). Defendant's argument is like telling a strict-liability product-defect plaintiff to plead the manufacturer's negligence: negligence matters in a different tort, but strict liability does not require it. The same is true here. Section 227(c) hinges on consent and repeated calls, not on whether an ATDS was used, so the Complaint already alleges everything the statute demands.

C.   *The Plaintiff is an Arkansas resident who received the text messages in Arkansas. He denies every consenting to texts from Squeeze or agreeing to litigate his claims there. As such, Arkansas is the appropriate venue.*

To be clear, and as explained above, the Plaintiff denies having agreed to litigate his claims in Florida or to signing any kind of agreement with Squeeze that would require as much. When deciding a motion to transfer pursuant to § 1404(a), the Court must consider three factors: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). Typically, there is a presumption in favor of the plaintiff's choice of forum, and the burden is on the party seeking the transfer "to show that the balance of factors 'strongly' favors the movant." *Graff v. Qwest Communs. Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (citation omitted). Transfer should be denied if the factors weigh evenly or "only slightly in favor of transfer." *Id.* In evaluating transfer, "[a] court may consider undisputed facts presented through affidavits, depositions, stipulations, and other relevant documents." *Dial Tech., LLC v. Bright House Networks, LLC*, Civ. No. 13-2995, 2014 U.S. Dist. LEXIS 117424, 2014 WL 4163124, at *8 (D. Minn. Aug. 21, 2014).

In weighing the balance of conveniences, courts may consider where "the operative facts of the case occurred." *See Hormel Foods Corp. v. Medina & Medina, Inc.*, Civ. No. 06-384 (JRT/JJG), 2006 U.S. Dist. LEXIS 70266, 2006 WL 2735491, at *2 (D. Minn. Sept. 25, 2006) Relatedly, courts have a meaningful interest in deciding local controversies in their own states. *See In re Apple, Inc.*, 602 F.3d at 914 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)). In TCPA cases, this is where the call took place. *See Camarena*, 2015 U.S. Dist. LEXIS 85436, 2015 WL 4036258, at *4 (finding in a TCPA case that "[t]he material events" took place where alleged calls took place). Indeed, as another court explained in a TCPA case, that is a sufficient basis for denying a motion to transfer the case away from Plaintiff's chosen venue:

> The plaintiff's choice of forum is entitled to at least some weight, even in purported class actions. Specific to this case, the plaintiff was allegedly injured in North Carolina, suffering, among other things, significant inconvenience from the defendant's robocalls. Requiring the plaintiff to prosecute a case in an inconvenient forum where his damages will largely be about inconvenience to him does not seem in the interests of justice. This is especially so since moving the case forward in this district is not particularly inconvenient or expensive for LeafFilter, see discussion infra. This district has a significant interest is seeing that citizens here obtain justice in a convenient forum.

*Button v. Leaffilter North, LLC*, No. 24-cv-132 (E.D.N.C. May 14, 2024). Precisely the same circumstances exist here, warranting the same outcome.

D.    *Plaintiff's class allegations should not be stricken.*

Courts in this Circuit have long cautioned that striking class allegations at the pleading stage is an extraordinary measure, appropriate only in the rarest of circumstances. The Eighth Circuit itself labels Rule 12(f) motions to strike class claims "drastic" and "infrequently granted," *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000), and district judges therefore

"typically deny as premature motions to strike class allegations filed significantly in advance of any possible motion for class certification." *In re Folgers Coffee Mktg. Litig.*, 2021 Lexis 253793, at *4 (W.D. Mo. Dec. 28, 2021).

Consistent with that guidance, courts refuse to eliminate class claims before the parties have exchanged discovery bearing on numerosity, commonality, typicality, and predominance. In *Bishop v. Delaval Inc*., the Court noted "at this early stage in litigation, prior to any class discovery or a motion for class certification, the Court cannot determine whether individualized matters will predominate over common issues." 2020 WL 4669185, at *2 (W.D. Mo. Jan. 28, 2020). The Western District of Arkansas reached the same conclusion last year, holding that challenges based on alleged "fail-safe" definitions or predominance disputes "are best resolved, if at all, on a fully developed Rule 23 record—not the face of a complaint." *Katz v. CHW Grp., Inc.*, 2023 U.S. Dist. LEXIS 176206, at *17-18 (W.D. Ark. Sept. 29, 2023).

Defendant's motion ignores this uniform line of authority. It asks the Court to resolve factual questions—consent, revocation, individualized damages—without the benefit of a single document request, deposition, or expert report. But whether those issues ultimately swamp common proof is precisely what Rule 23's rigorous analysis is designed to test after discovery, not at the threshold. See *Folgers*, 2021 U.S. Dist. LEXIS 253793, at *4 (refusing to strike allegations that "might well be trimmed or re-drafted later, but are not fatally defective now").[2]

---

[2] Nor does the "fail-safe" label rescue Defendant's motion. Even if the class definition were imperfect—and Plaintiff disputes that it is—courts simply redefine the class later rather than wield Rule 12(f) as a guillotine. See, e.g., *Courtright v. O'Reilly Auto. Stores, Inc*., 2014 WL 12623695, at *6 (W.D. Mo. July 7, 2014) (declining to strike purported fail-safe class; "this issue is better addressed by redefining the class at the class-certification stage").

1.  *The proposed class definitions do not create improper fail-safe classes.*

Squeeze's motion flips the Rule 23 sequence on its head. A court may strike class allegations at the pleading stage only when "it is facially apparent from the pleadings that there is no ascertainable class." *Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 4:12-CV-221, 2013 WL 275568, at *4 (E.D. Mo. Jan. 24, 2013). Plaintiff has more than adequately pleaded his class claims. Motions to strike class allegations are a drastic remedy—and courts are clear that they are "particularly disfavored" because, before discovery, it is "rarely easy to determine whether the allegations are meritorious." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 834 (D. Ariz. 2016). Consistent with that view, courts in this District emphasize that pre-discovery striking is "a rare remedy" precisely because "it is seldom, if ever, possible to resolve class-representation questions from the pleadings alone." *Legacy Gymnastics, LLC v. ARCH Ins. Co.*, 2021 WL 2371503, at *2 (W.D. Mo. June 9, 2021); *see also Whittaker*, 2023 WL 167040, at *1 (calling such motions "drastic" and "generally disfavored"). Indeed, the very text of Rule 12(f) targets only insufficient defenses or material that is "redundant, immaterial, impertinent, or scandalous"—categories that do not comfortably describe class allegations at all. *Canady v. Bridgecrest Acceptance Corp.*, 2022 WL 279576, at *3 (D. Ariz. Jan. 31, 2022).

Class certification under the TCPA is routine, not impossible (as required to strike class allegations under Eighth Circuit law[3]). Congress designed the statute for aggregate resolution; as the Fourth Circuit put it, the TCPA "clearly supports class-wide resolution" because few individuals would sue "no matter how frustrated they were with the intrusion on their privacy." *Krakauer*, 925 F.3d 654, 656 (4th Cir. 2019). Unsurprisingly, courts regularly certify TCPA

---

[3]  A district court may grant a motion to strike prior to class action certification when "it is apparent from the pleadings that the class cannot be certified under Rule 23(b)(2)." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1094 (8th Cir. 2021).

classes. See, e.g., *Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019). Squeeze's suggestion that Plaintiff cannot meet Rule 23's familiar requirements is therefore unfounded.

Even if the current class definition contained imperfections—and it does not—striking is still improper because a complaint's definition does not freeze the ultimate contours of a certifiable class. "The proper stage for fine-tuning the class definition is certification, not pleading." *Courtright v. O'Reilly Auto. Stores, Inc.*, 2014 U.S. Dist. LEXIS 201074, 2014 WL 12623695, at *2 (W.D. Mo. July 7, 2014); *Stanbury Law Firm v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (holding that striking allegations is an "extreme measure" and is necessarily infrequently granted); *Nobles v. State Farm Mut. Auto. Ins. Co.*, 2012 U.S. Dist. LEXIS 132318, 2012 WL 4090347, at *2 (W.D. Mo. Sept. 17, 2012) (collecting cases and concluding that "[t]he weight of authority indicates that courts should meet motions to dismiss class allegations at the 12(b)(6) stage with a great deal of skepticism").

Contrary to Squeeze's rhetoric, the proposed definition is not a fail-safe class. A fail-safe class exists only when membership turns on prevailing on the merits. *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). Simply because Defendant believes Plaintiff's claims will fail does not mean the Court has a basis to strike the claims or allegations at this preliminary stage of the litigation. See e.g., *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) ("Upon motion made by a party ... or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Because the rule is stated in the permissive, however, it has always been understood that the district court enjoys liberal discretion thereunder. Despite this broad discretion however, striking a party's pleadings is an extreme measure, and, as a result, we have previously

held that motions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted."). *See Robertson v. Mortg. Rsch. Ctr., LLC*, 2024 U.S. Dist. LEXIS 221676, *4-5.

Here, membership is determined by objective criteria: (1) persons who never supplied their telephone number to Squeeze, (2) who nevertheless received more than one marketing call (or text) from Squeeze within twelve months, and (3) whose numbers were listed on the National Do-Not-Call Registry for at least 31 days. Those facts require no merits adjudication. *Brown*, 330 F.R.D. 260, 268 (N.D. Cal. 2019). Nor does the class definition turn on "consent." Because class membership is independent of liability, the fail-safe label does not apply. See *Sagar v. Kelly Auto. Grp.*, 2021 WL 5567408, at *7 (D. Mass. Nov. 29, 2021).

Squeeze has likewise failed to show that commonality is impossible. Rule 23(a)(2)'s "minimal" standard, *Meyer v. Portfolio Recovery Assocs.*, LLC, 2011 WL 11712610, at *3 (S.D. Cal. Sept. 14, 2011), is satisfied by common questions that will drive this litigation: whether Squeeze's calls were telemarketing, whether they were placed knowingly or willfully, and whether they violated the TCPA in uniform fashion. Courts routinely find those very issues sufficient. *See Powell v. YouFit Health Clubs LLC*, 2019 WL 926131, at *4 (S.D. Fla. Jan. 14, 2019); *Knapper*, 329 F.R.D. at 242.

In short, this is not the "rare case" in which class allegations may be stripped at the threshold. The motion to strike should be denied. However, in virtually every case that the court has reviewed, at the pre-class certification stage of litigation, when a proposed class is stricken for being determined to be a fail-safe class, the court allows the plaintiff the opportunity to amend the class definition. *See Sauter v. CVS Pharmacy, Inc.*, 2014 U.S. Dist. LEXIS 63122, 2014 WL 1814076, at *9 (S.D. Ohio, May 6, 2014)("[T]he fail-safe problem . . . can and often should be solved by refining the class definition rather than by flatly denying class

15

certification."). Indeed, *Sauter*, which is cited by the Defendant, a court held that a TCPA plaintiff needed to amend his class definition because he included the language Defendant seems to want Plaintiff to include in a TCPA proposed class definition:

> Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS. Because the TCPA prohibits calls to cellular telephones using ATDSs unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class…However, if the Plaintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendant. This is the definition of a prohibited fail-safe class.

Other courts agree. *See e.g. Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015). Here, the Plaintiff avoided that potentially fatal flaw in drafting by not mentioning consent in the class definition. The Defendant concedes this and attempts to bootstrap the consent argument by claiming elsewhere that the Plaintiff denies providing consent. Critically, however, that legal term is not part of the Plaintiff's class definition.

Thus if the Court were to determine that the class definitions need improvement, the proper remedy is reformulation—not outright dismissal.

2. *Defendant's attacks on predominance and commonality are not appropriately raised via a motion to strike under Rule 12(f).*

Rule 23(b)(3) asks whether a single adjudication will resolve issues that matter "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). It does here. Every class member received at least two Squeeze marketing texts after listing a number on the National Do-Not-Call Registry, and every text was delivered through the same automated platform. The core questions are therefore the same for everyone:

1.      Did Squeeze's text campaign constitute "telephone solicitation" under 47 C.F.R. § 64.1200(f)(15)?

2.      Did Squeeze transmit texts to numbers on the Registry after thirty-one days, in violation of 47 C.F.R. § 64.1200(c)(2)?

3.      Did Squeeze honor opt-out requests, as the TCPA and FCC rules require?

Each question turns on uniform evidence—Squeeze's dialing logs, its common scripting, and its internal do-not-call procedures. Courts routinely certify TCPA classes on that basis. See, e.g., *Head v. Citibank, N.A.*, 340 F.R.D. 145, 152-54 (D. Ariz. 2022); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 242-44 (D. Ariz. 2019).

Squeeze says consent defeats predominance. Not so. Consent is an affirmative defense under the TCPA. *See e.g. Rosales v. Heath*, No. 8:17CV87, 2019 U.S. Dist. LEXIS 225294, at *9 (D. Neb. June 27, 2019) provable or disprovable from the same records that show who received the texts. Where a defendant relies on a single database to claim consent, "the consent issue itself can be decided on a class-wide basis." *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 658 (4th Cir. 2019). And if discovery later shows pockets of individualized consent, Rule 23(d) lets the Court refine the class definition or create subclasses. Striking at the pleading stage would short-circuit that orderly process. Indeed, courts around the nation have held that TCPA consent issues are not problematic from a class certification perspective, particularly when there are potentially uniform issues with the offered consent evidence. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014). In fact, as the Seventh Circuit has stated, "Class certification *is normal* in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (emphasis added).

Fortunately for consumers bombarded with illegal telemarketing calls, it is not enough for a telemarketer to allege consent, it must prove it. What's more, merely mentioning that discovery will reveal that one has an affirmative defense to some class members' claims, and SunRun doesn't and can't do even *that* with respect to Ms. Banks, is insufficient to strike class allegations, as appellate courts have ruled in other TCPA cases. *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (holding that "the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)" and that "allowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases wide latitude to inject frivolous issues to bolster or undermine a finding of predominance").

Plaintiff's class is not overbroad merely because of a purported defense of consent to some potential class members under the TCPA. Even at the *class certification* stage, evidence of a defense as to some prospective class members does not render a class overbroad if the plaintiff demonstrates a means of ultimately excluding consumers that are subject to the defense from the class. *True Health Chiropractic, Inc. v. McKesson Corp.,* 896 F.3d 923, 932-3 (9th Cir. 2018) (predominance satisfied in TCPA case where "the record shows . . . little or no variation" in the forms used to obtain consent). Moreover, discovery can be used to identify which telephone numbers that were called had provided consent and any other class member identification issues. *See, e.g., Mey v. Frontier Communications Corp.*, No. 13-cv-01191-MPS, slip op. (ECF 102) (D. Ct. 2015); *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 329 (W.D. Okla. 2018). The pleadings describe a single texting program aimed at thousands of customers—a textbook scenario for class treatment. Whether Squeeze can prove individualized consent is a merits question for another day, not a basis to excise the class allegations now.

Because common questions plainly predominate—and because discovery, not guesswork, should decide any lingering consent issues—Squeeze's motion to strike should be denied.

E.  *Defendant's request for a more definitive statement under Rule 12(e) should be denied.*

Rule 12(e) supplies a "remedy for unintelligibility" not for "a mere lack of detail," so a court should grant a motion for a more-definite statement only when the pleading is so vague or ambiguous that the opposing party cannot reasonably prepare a response.  *Tinder v. Lewis Cnty. Nursing Home Dist.*, 207 F. Supp. 2d 951, 960 (E.D. Mo. 2001) (citing *Cox v. Me. Maritime Acad.*, 122 F.R.D. 115, 116 (D. Me. 1988)).  Rule 12(e) motions are generally disfavored "[b]ecause of the liberal notice-pleading standard governing federal pleadings and the availability of extensive discovery[.]" *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 901 (D. Minn. 2013) (internal marks and quotation omitted).  "Rule 12(e) provides a remedy for unintelligible pleadings" and "is not intended to correct a claimed lack of detail." Id. (quotation omitted). "When examining whether a more definite statement is required under Rule 12(e), the only question is whether it is possible to frame a response to the pleading." *Lyon Fin. Sers., Inc. v. MBS Mgmt. Servs., Inc.*, 2007 U.S. Dist. LEXIS 72195, 2007 WL 2893612, at *9 (D. Minn. Sept. 27, 2007) (citing *Century '21' Shows v. Owens*, 400 F.2d 603, 607 (8th Cir. 1968)).

Rule 8 expressly permits alternative and even inconsistent allegations. A pleader "may set out two or more statements of a claim or defense alternately or hypothetically," and "the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2)–(3). Plaintiff therefore may allege—without contradiction—that (1) he never consented to these telemarketing texts and (2) even if Squeeze somehow proves consent, he unequivocally revoked it. Courts routinely allow that formulation. See *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1130 (8th Cir. 2012) (noting that Rule 8 contemplates pleading in the alternative). Moreover, the complaint lays out

19

Squeeze's conduct with specificity: the dates and content of the messages, the absence of prior express invitation or permission, and the multiple revocation demands ignored by Squeeze. Finally proving consent is Squeeze's burden—not Plaintiff's. *See Van Patten v. Vertical Fitness, LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) ("consent is an affirmative defense"). Requiring Plaintiff to plead minute details of a defense he denies would invert the rules of civil procedure and hand Squeeze an early tactical advantage.

Finally, the request that Plaintiff "remedy the defects" is really an attempt to preview discovery, not cure vagueness. Squeeze disputes the facts, but a Rule 12(e) motion is not a vehicle to test the substantive merits of a complaint *Montoya v. Sloan Valve Co.*, No. 4:20-CV-01108-AGF, 2022 U.S. Dist. LEXIS 24067, at *9 (E.D. Mo. Feb. 10, 2022) If Squeeze wants more detail, the Federal Rules give it the usual tools—Rule 26 disclosures, interrogatories, requests for admission—not a rewrite of an already-clear pleading.

## IV.    CONCLUSION

This Court should deny Defendant's motion in its entirety. Alternatively, it should permit the Plaintiff to amend to correct any deficiencies.

Dated: June 27, 2025                              Respectfully Submitted

                                                 *s/ Anthony Paronich*
                                                 Paronich Law, P.C.
                                                 350 Lincoln Street, Suite 2400
                                                 Hingham, MA 02043
                                                 [o] (617) 485-0018
                                                 anthony@paronichlaw.com

                                                 Attorney for Plaintiff and the Putative Class